29473. HUDGINS *v.* SERVICE FIRE INSURANCE CO.

Decided June 27, 1942. Adhered to on rehearing July 30, 1942.

*Carl T. Hudgins,* for plaintiff.

*Allen W. Clapp, Devereux H. Lippitt, Jr.,* for defendant.

STEPHENS, P. J. (After stating the foregoing facts.) The plaintiff is not suing strictly on the policy. The suit is on an alleged compromise agreement. This is a suit on an alleged contract. A contract is composed of an offer and an acceptance. The petition fails to definitely set forth the terms of the offer and its acceptance, and fails to show whether the agreement alleged to have been breached by the insurer ever came into existence. The petition shows that a certain method of settlement was proposed by the agent, Dowdle, on December 16, 1940; that certain papers, one purporting to fix the amount of the loss, and the other purporting to "lend" the insured this amount repayable from the insured's net recovery against the third party responsible for the loss, but both appearing to assign to the company the entire cause of action against the third party, were submitted to the insured for his signature on December 20, 1940. He refused to sign them because, as he contends, the insurer therein asked for more than it was entitled to receive by way of subrogation. The petition shows that as a consequence the company paid no money to the insured; that, nevertheless, the insured filed suit against the third party responsible for the loss, on December 31, 1940; that this suit was settled, favorably to the insured, on January 18, 1941; and that on January 29, 1941, the plaintiff informed said Dowdle that "he was then and there offering to agree to the admitted liability of $299.59 . . , and hold defendant liable on its said contract."

If there was an acceptance of the company's offer the natural place to have shown this was in paragraph 8 of the petition where the company's offer, as set forth in the above statement of facts, is alleged to have been made on December 16. But the only thing there alleged in the way of an acceptance is that, "relying on said agreement," the plaintiff's attorney prepared to file, and on December 31 did file, suit against the third party. Up to that point, at least, no agreement is alleged on which the plaintiff had a right to rely. If it be contended that the insurer, on December 20, added to or changed the terms of its original offer by demanding plaintiff's signature to papers wherein he was to transfer to the company his entire cause of action as to the third person, the answer must be that an offeror has the privilege of changing the terms of his offer before it is accepted, and that at the time this supposed change was made there had been no acceptance. The plaintiff refused to sign the papers. Regardless of whether the terms of the offer had been added to or changed, either rightly or wrongly, the offer was rejected by the insurer. Nothing happened thereafter until December 31. The plaintiff alleged that on that day, "relying on said agreement," he filed the suit against the third person who had caused the damage to the automobile. At what particular time the plaintiff began to "prepare" to file the suit, in reliance on said agreement, is not alleged, but, after having rejected the offer, he had no more right to prepare the suit in reliance on the offer than to file the suit. Almost a month later (January 28, 1941) the suit against the third person was settled by payment by the latter to the plaintiff of $510.10. On the next day the plaintiff's attorney notified the insurer that he was "offering to agree" to the admitted liability of $299.59 and was holding defendant liable on said contract.

We fail to find from the whole petition that any contract was consummated. Assuming that the insurer's offer contained illegal or unfair elements, the offer was rejected. The plaintiff could not accept a part only of the offer. That, however, is what the petition shows the plaintiff sought to do. After rejecting the entire offer, he put it out of his power to comply with a part of it, and thereafter (one month and nine days subsequently to its original proposal) attempted to accept another part of it, to wit, the $299.59. Throughout the petition the agreement is merely assumed, not

plainly and distinctly alleged. For aught that appears in the petition, construing it most strongly against the plaintiff as we are compelled to do, the purported agreement which is sued on may never have existed. For the foregoing reasons the petition fails to disclose a right vested in the plaintiff, to wit, that the defendant pay to him the $299.59, or any of the other amounts sued for in the alternative, growing out of the purported agreement. No such right being shown, of course there was no duty which the defendant could have breached. See *Ellison* v. *Georgia Railroad,* 87 *Ga.* 691, 699 (13 S. E. 809).

The plaintiff alleged that he instituted suit against the alleged tort-feasor to recover damages to his automobile in the sum of $575; that this suit was afterwards settled by the plaintiff with the tort-feasor for $510.10, and this sum was paid to the plaintiff; that this suit was dismissed by the plaintiff; that the plaintiff did not recover the full loss and damage sustained by him, in that, after paying the court costs of the suit "he lacked at least $29.50 receiving his full damage," and in addition he "became liable for a reasonable attorney's fee to be paid out of said recovery amounting to $168.53, or one third of the net recovery, which sum is reasonable;" that in the event he is not entitled to recover the sum of $299.59 which he alleged he is entitled to recover, and which as we have held he could recover only on the basis of a contract made with the defendant after the loss had occurred, that he recover the $29.50 as representing the unpaid portion of damages and court costs, and $168.53 attorney's fee. While the plaintiff sues in the alternative for either $299.59, the amount stipulated in the alleged contract made subsequent to the occurrence of the loss, and the $198.03 representing the unpaid portion of damages and court costs and attorney's fee, there was no demurrer to the petition for a misjoinder. The petition therefore may be treated as a suit in two counts: one to recover $299.59 on the alleged contract made after the loss had occurred, and the other to recover $198.03 representing the unpaid portion of damages and costs and attorney's fee based on rights which the plaintiff may have under the policy.

While we have held that the plaintiff was not entitled to recover $299.59 on the alleged contract made after the damage had occurred, yet, since the plaintiff asserts in his motion for rehearing that he was suing on the policy and is entitled to recover under

the policy the $299.59, we go further and hold that, under the policy, the plaintiff is not entitled to recover this amount. Assuming that in a suit by the plaintiff, the insured, against the defendant, the insurer, to recover on the policy, the plaintiff is entitled to recover his full damages, as may appear from the evidence adduced on the trial, irrespective of whatever amount the plaintiff may have received from the tort-feasor in full settlement of the plaintiff's suit against him for damage to the plaintiff's automobile, yet where the plaintiff's full damage to his automobile, as alleged in his present suit against the insurance company, as appears from paragraph 5 of the petition, is in the sum of $535.10, which under the terms of the policy is reducible by a deduction therefrom of $50, making a total alleged damage of $485.10, and the plaintiff, as alleged in paragraph 15 of his petition, received from the tort-feasor in the plaintiff's suit against him to recover damages to the automobile the sum of $510.10, it appears from the petition that he has received and has been paid more than the full damage alleged as due him by the insurance company. Since the contract of insurance is one of indemnity, the plaintiff can not, after he has received and collected from the tort-feasor a sum in excess of the amount of the plaintiff's full damage as alleged in his present suit, hold the insurance company liable to the plaintiff in any amount as damage under the policy. To permit the plaintiff to recover in this suit against the insurance company on the policy, the sum of $299.59 as representing a portion of the damage to the automobile, would permit the plaintiff to receive double indemnity for a portion of his damage. This, of course, the plaintiff is not entitled to receive. Since, as it appears above, the plaintiff has received payment for more than his alleged damage to his automobile he can not recover any alleged difference between what he actually received as damage to his automobile and his true damage.

There is no provision in the policy by which the insurance company was under any obligation to sue the tort-feasor for, or to collect from him, damages to the automobile, except in so far as the insurance company may have acquired such right by subrogation after having paid the plaintiff a sum covering a portion or all of plaintiff's loss. Since the defendant has paid the plaintiff nothing the defendant obtained no right of subrogation. There appears no contract between the plaintiff and the insurance company which

would impose on the company the duty of collecting damages for the plaintiff from the tort-feasor. Under the facts of this case the plaintiff is not entitled, after having sued the tort-feasor and collected damages to his automobile from the tort-feasor, to call on the insurance company to reimburse him for any expense he may have incurred in prosecuting the suit against the tort-feasor, such as court costs and attorney's fee in that suit.

The petition failed to set out a cause of action, the judge of the civil court of Fulton County did not err in sustaining the general demurrer to the petition, and the appellate division of that court did not err in affirming the judgment of the trial judge.

The above represents the opinion of this court as modified and changed on rehearing. The judgment of affirmance is adhered to.

*Judgment affirmed. Sutton and Felton, JJ., concur.*